# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

FRIENDS OF ST. FRANCIS XAVIER      CIVIL ACTION No: 07-2713
CABRINI CHURCH

**Versus**

R. DAVID PAULSON, in his official      SECTION "B"(5)
capacity as administrator of FEMA


## ORDER AND REASONS

Before the Court is Plaintiff's Motion for Summary Judgment (Rec. Doc. No. 76) and Defendant's Cross Motion for Summary Judgment(Rec. Doc. No. 79). Defendant in intervention filed an opposition to Plaintiff's motion (Rec. Doc. No. 80). Plaintiff filed reply (Rec. Doc. No. 82). For reasons discussed during oral argument and for the following reasons Plaintiff's Motion for Summary Judgment is **DENIED,** and Defendant's Motion for Summary Judgment is **GRANTED**.

## BACKGROUND

On August 29, 2005 and September 24, 2005, President George W. Bush, at the request of Louisiana Governor Kathleen Blanco, declared two major disasters due to severe damage from Hurricanes Katrina (DR-1603-LA) and Rita (DR-1607-LA). Holy Cross College, Inc. ("Holy Cross"), located at 4950 Dauphine Street, New Orleans, Louisiana in the Lower Ninth Ward, sustained severe damage as a result of the hurricanes. Administrative Record ("AR") 2294. Holy

Cross School subsequently applied for and was deemed eligible for FEMA Public Assistance funds to construct a new campus on the site of Cabrini Church and the St. Frances Xavier Cabrini and Redeemer School ("School") in the Gentilly neighborhood of New Orleans. Cabrini Church and the School also sustained severe damage as a result of the hurricanes. Cabrini Church and the School are both owned and operated by the Roman Catholic Church of the Archdiocese of New Orleans ("Archdiocese") and the Congregation of St. Frances Xavier Cabrini Roman Catholic Church ("Parish Corporation"). AR 2294. Pursuant to 44 C.F.R. §§ 206.221 and 206.226(g), Federal Emergency Management Agency ("FEMA") may fund the relocation of eligible destroyed facilities such as private nonprofit and educational facilities. FEMA is prohibited from providing Federal disaster assistance funds for repair, restoration, or reconstruction of a facility that is dedicated to or primarily used for religious purposes at the time of the disaster. 42 U.S.C. § 5170c, 44 C.F.R. § 206.226. Cabrini Church is not an eligible facility, and no Federal disaster funds were requested for demolition of Cabrini Church. AR 2294, 2295.

## A. The Section 106 Process at the Cabrini Church Site in Gentilly

Because FEMA funded the construction of a school that potentially affected historic properties (namely Cabrini Church), FEMA was required to comply with the Section 106 review process under the National Historic Preservation Act ("NHPA"). At the time

of this Undertaking, a Programmatic Agreement for FEMA funded undertakings in the State of Louisiana was in effect among FEMA, State Historic Preservation Office ("SHPO"), Louisiana Office of Homeland Security and Emergency Preparedness ("LOHSEP"), and Advisory Council on Historic Preservation ("ACHP"). *See* Exhibit A. Section 106 and the Programmatic Agreement required FEMA to follow a four-step process.

First, FEMA determined that its action to fund the relocation and construction of Holy Cross School to the Gentilly neighborhood was an "Undertaking" which had the potential to affect historic properties (*i.e.*, Cabrini Church). *See* AR 2296; 36 C.F.R. § 800.3(a); *see also* Exhibit A, p. 6. In making this determination, FEMA consulted with the SHPO and determined that Cabrini Church was eligible for listing in the National Register "for its innovative and complex structural design, exemplifying an exceptional singular design for a house of worship in New Orleans erected during the post-World War II period, and because the Church represents the work of the preeminent Modern local architecture firm of Curtis and Davis…" *See* AR 2296; 36 C.F.R. § 800.3(c). FEMA also involved local government officials and the public in the process. *See* AR 2295-96; 36 C.F.R. § 800.3(f)(1).

Second, FEMA, through consultation with the SHPO, defined the APE (the APE is always defined before identification efforts are undertaken) of the Undertaking as the site of Cabrini Church and

School in the Gentilly neighborhood. AR 2295-96; 36 C.F.R. §
800.4(a)(1); Exhibit A, p. 6. FEMA and the SHPO agreed not to
include the existing Holy Cross School campus in the Lower Ninth
Ward in the APE because at the time the MOA was executed it was
not certain what FEMA funded work would be performed at the site.
AR 2296. Section 106 allows for "phased identification and
evaluation" where alternatives under consideration consist of large
land areas or if the agency official provides for it in an MOA. 36
C.F.R. § 800.4(b)(2). FEMA would conduct appropriate review
whenever Holy Cross School submitted proposed project plans to
FEMA. AR 2296. Because the APE involved a historic property
(Cabrini Church), FEMA notified and sought input from the
consulting parties on the effects of the Undertaking. AR 2296; 36
C.F.R. § 800.4(d)(2).

Third, FEMA, in consultation with the SHPO, determined that
the Undertaking would have an adverse effect on Cabrini Church
because it would result in demolition of the church which was
eligible for the National Register. AR 2296; 36 C.F.R. § 800.54(a).
Accordingly, FEMA and the SHPO developed a plan to include the
public in the Section 106 review process to seek and consider
public views on the Undertaking – specifically, to discuss the
project and identify alternatives to avoid, minimize and/or
mitigate any potential adverse effects from the Undertaking. AR
2295. FEMA held five consultation meetings with the consulting

parties on February 7, 15, 26 and March 5 and 16, 2007. *Id.* The February 26, 2007 consultation meeting included Parish Corporation, St. Frances Xavier Cabrini Parish Council, National Trust for Historic Preservation, City of New Orleans, City Council, Office of Recovery Management, New Orleans Planning District (District Six), **Friends of Cabrini Church**, Mississippi Band of Choctaw Indians, Oak Park Civic Association, Vista Park Civic and Improvement Association (hereinafter "consulting parties"). AR 2296.

Fourth, after further consultations with the consulting parties, FEMA reached agreement in developing and evaluating alternatives to avoid, minimize, or mitigate adverse effects of the Undertaking. 36 C.F.R. § 800.6. During the Section 106 consultation process, Plaintiff and the ACHP urged FEMA to consider placing the existing Holy Cross School campus within the APE of the Undertaking because of the "reasonably foreseeable" effects to the school itself and the surrounding community. AR 1624-26, 1986-87. After further consideration, FEMA decided to utilize a "phased approach" regarding the APE because Holy Cross School had not submitted any proposed plans for the existing campus. AR 2296. Using a "phased approach," FEMA would conduct Section 106 review for the Gentilly site first and then conduct subsequent Section 106 review after it received proposed plans from Holy Cross School on the existing campus. AR 2296. All signatory parties, including the SHPO and ACHP, concurred with FEMA's approach and executed the MOA, which

also contained an Agreement outlining measures to avoid, minimize, and mitigate adverse effects on Cabrini Church. AR 2294-2311. The executed MOA governs the Undertaking at the new Holy Cross School site and all of its parts. *Id.; see* 16 U.S.C. § 470(h)-(2).  On June 5, 2007, the Archdiocese demolished Cabrini Church. AR 2849-56.

## B. The Section 106 Process at the Old Holy Cross Site in The Lower Ninth Ward

Ultimately, Holy Cross informed FEMA of its intention to "mothball" all structures at the Lower Ninth Ward Holy Cross site (Undertaking). In response, FEMA initiated consultation with the SHPO pursuant to the Programmatic Agreement to determine whether the structures were individually eligible for listing in the National Register of Historic Places or contributing elements to the National Register Historic District referred to as Holy Cross Historic District. Supp. AR 4733-46.  After consultation with the SHPO, FEMA determined that the structures at the Holy Cross School campus, with the exception of the school's Administration Building, were "non-contributing elements to the [Holy Cross] historic district as they were built after the historic district's period of significance." Supp. AR 4733. Because Holy Cross' Scope of Work indicated "no ground disturbing activities associated with the mothballing of the buildings at Holy Cross School," FEMA determined that there would be "No Adverse Effect on historic properties as a result of the Undertaking." Supp. AR 4734. Accordingly, on January

24, 2008, FEMA, with the SHPO's concurrence, determined that the Undertaking would not adversely affect historic properties within the Holy Cross Historic District. Supp. AR 4781-82.

After FEMA made this determination, Holy Cross approached FEMA regarding changing the proposed Undertaking to include demolishing and removal of seven structures (including foundations) plus the swimming pool at the Holy Cross School campus. Supp. AR 4809. The Administration Building was excluded from demolition but would be "mothballed." *Id*. On May 28, 2008, FEMA reinitiated consultation with the SHPO regarding Holy Cross' change in the proposed Undertaking and determined that the applicant's request would have "No Adverse Effect to historic properties" based on a number of factors, including: 1) all the buildings proposed for demolition were not individually eligible for listing in the National Register of Historic Places and were non-contributing to the Holy Cross National Register Historic District; 2) the Undertaking was limited to demolition and slab removal and did not include reconstruction; and 3) FEMA placed restrictions on the scope of ground disturbance activities at the site. Supp. AR 4810-11. On June 5, 2008, the SHPO concurred with FEMA's determination of "No Adverse Effect" regarding the proposed Undertaking, but urged caution during demolition due to the close proximity of the Administration Building. Supp. AR 4826-27.

## LAW AND ANALYSIS

### A. Standard of Review for Summary Judgment

Summary judgment is available if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56. The moving party has an initial burden of demonstrating the absence of a genuine issue of material fact. *Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, 638 F.Supp.2d 692, 696 (E.D. La. 2009); *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is improper if a disputed material fact exists, which is defined as a fact that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Once the moving party establishes that insufficient evidence is within the record to support an essential element of the opposing party's claim, the burden shifts to the non-moving party. 638 F. Supp.2d at 693-94. The non-movant must then demonstrate that an issue of fact does exist, by identifying specific facts on the record or by submitting additional evidence. *Id.* at 694. Summary judgment is appropriate if "no reasonable trier of fact could find for the nonmoving party." *Id.* at 693.

**B. Standard of Review for Agencies**

The standard of review is set forth in the Administrative Procedure Act's ("APA") provision for review of final agency action, 5 U.S.C. § 706. *See Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 377 (1989). Under the APA, a court may only set aside agency actions "found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2)(A). The "arbitrary and capricious" standard is "highly deferential." *La. Crawfish Prods. Ass'n v. Rowan*, 462 F.3d 352, 355 (5th Cir. 1991)(quoting *Sabine River Auth. v. U.S. Dep't. Of Interior*, 951 F.2d 669, 678 (5th Cir. 2006). The standard contains a strong presumption in favor of upholding agency decisions made within the scope of the agency's expertise. *Or. Natural Res. Def. Council*, 490 U.S. at 377; *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 175 (5th Cir. 2000). An agency action is arbitrary and capricious only where "the agency has relied upon factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *Tex. Oil & Gas Ass'n v.*

*EPA*, 161 F.3d 923, 933 (5th Cir. 1998).

Further, the standard is a narrow one and a court "should not substitute [its] own judgment for the agency's." *Gulf Restoration Network v. U.S. Dep't of Transp.*, 452 F.3d 362, 368 (5th Cir. 2006)(citing *Kleppe v. Sierra Club*, 427 U.S. 390, 410, 96 S.Ct. 2718, 49 L.Ed.2d 576 n. 21 (1976)). Though a court's review must be probing, it must only consider whether the agency decision "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park* v. Volpe, 401 U.S. 402, 416 (1971). If the agency has "considered the relevant factors and articulated a rational connection between the facts found and the choice made," its decision must be upheld. *Balt. Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 105, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983); *Sierra Club v. Glickman*, 67 F.3d 90, 97 (5th Cir. 1995).

### C.  Mootness

The United States Constitution, Article III, section 2, clause 1, requires the existence of a case or controversy to support our jurisdiction. *Amar v. Whitley*, 100 F.3d 22, 23 (5th Cir. 1996). The case or controversy doctrine underpins both standing and mootness. *Friends of the Earth v. Laidlaw Envtl. Servs*. (TOC), 528 U.S. 167, 180, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Mootness is "the doctrine of standing set in a time frame: The requisite

personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). The mootness doctrine "ensures that the litigant's interest in the outcome continues to exist throughout the life of the lawsuit ... including the pendency of the appeal." *McCorvey v. Hill*, 385 F.3d 846, 848 (5th Cir. 2004).

"An issue becomes moot and hence no longer justiciable where as a result of intervening circumstances there are no longer adverse parties with sufficient legal interests to maintain the litigation." 6A Moore's Federal Practice P57.13, at 57-128 (1973 ed.). Compare *Caldwell v. Craighead*, 432 F.2d 213 (6th Cir. 1970), cert. denied, 402 U.S. 953, 91 S.Ct. 1617, 29 L.Ed.2d 123 (1971) (request for injunctive relief against suspension from high school pep band mooted by student's move to another city), with *Jones v. Snead*, 431 F.2d 1115 (8th Cir. 1970) (expiration of semester suspension from college did not moot civil rights suit for injunctive relief in view of possible collateral consequences).

Intervenor, Holy Cross College Inc. d/b/a/ Holy Cross School ("Holy Cross") argues that Plaintiff's claims are moot and no longer justiciable due to the complete demolition of the St. Francis Xavier Cabrini Church, the substantial completion of construction at the new Holy Cross facilities at the St. Frances

Xavier Cabrini Church/ Redeemer-Seton site, and nearly 100% of the committed FEMA funds for all construction projects on the St. Frances Xavier Cabrini Church/ Redeemer-Seton site have been disbursed.

Plaintiff argues that their complaint is not moot, and is still justiciable, because the construction project at the new Holy Cross site is incomplete, certain terms and conditions of the MOA have not yet been met, such as the incorporation of various architectural remnants of Cabrini Church into the new Holy Cross facility, FEMA still has environmental and historical preservation compliance requirements which may yet be triggered, and the old school site still has historic buildings that have not yet been demolished.  (Rec. Doc. 82-2)

The most relevant case dealing with a claim of mootness as it applies to a construction project involving property that is subject to the NHPA is *Vieux Carre Property Owners, Residents and Associates, Inc. v. Brown, et al.*, 948 F.2d 1436 (5th Cir. 1991). In *Vieux Carre*, a historical society representing the property owners in the French Quarter of New Orleans appealed a judgment of the District Court dismissing the case as moot.  *Vieux Carre*, 948 F.2d at 1441-42.  The Court of Appeals reversed the District Court's holding of mootness, and in doing so, found that although the building project was substantially complete, and the requested

relief may amount to "irrelevant, trivial, or prohibitively expensive" relief depending upon the findings of the NHPA review, a finding of mootness was inappropriate because "[t]he question is not whether the precise relief sought at the time an application for injunction was filed is still available. The question is whether there can be *any* effective relief." *Id.* at 1446-47 (internal quotations removed)(emphasis in original). As such, the Fifth Circuit Court of Appeals found that the substantial completion of a construction project is not dispositive in rendering a case moot, where the case turns on the compliance of that construction project with National Historic or Environmental regulations. *Id.*

In the present case, this Court likewise finds that dismissing the case as moot is inappropriate. Just as in *Vieux Carre*, although the construction project is nearly complete, and allowing the case to proceed would likely affect Holy Cross' ability to proceed with their project, the case is not moot because there still exists relief that this court could "theoretically grant." *Id.* at 1446. A finding of mootness would be premature, because there are some buildings remaining that still have not been demolished at the original Holy Cross site in the Lower Ninth Ward. (Rec. Doc. 82-2).

Furthermore, FEMA recognized in a letter to the Advisory Council of the NHPA that it may still be required to comply with Environmental and Historical preservation requirements depending upon the "result of the still to be determined future use of the existing Holy Cross campus." (Rec. Doc. 82; *see also* Plaintiff's Ex. B). As such, since the Plaintiff's requested relief is not limited to the construction of the new Holy Cross facility at the St. Frances Xavier Cabrini Church/ Redeemer-Seton site, but is related to the future demolition/preservation of the historic site of the old Holy Cross facility as well to the actual propriety of the initial Section 106 advisory process, this case should not be found moot. "The result of the NHPA process may indeed be that Vieux Carre does not achieve meaningful relief, but it is almost always for the Advisory Council, not the district court, to make this determination . . . a district court should beware of 'shortcutting the process, which has been committed in the first instance to the responsible federal agency.'" *Vieux Carre*, 948 F.2d at 1447.

### D. Section 106 Compliance

Plaintiff claims that FEMA violated Section 106 of the National Historic Preservation Act. NHPA requires any federal agency with "jurisdiction over a proposed or federally assisted undertaking to ... take into account the effect of the undertaking

14

on any ... site ... that is included in or eligible for inclusion in the National Register [of Historic Places.]" 16 U.S.C. § 470f. Pursuant to 16 U.S.C. § 470s, the Advisory Council on Historic Preservation has promulgated administrative regulations which govern the review process. See 36 C.F.R. §§ 800.1-800.16 (2001).

These regulations provide for a four-step review process. *See id.* First, it must be determined whether the federal action is an "undertaking" which has the potential to affect historic properties. 36 C.F.R. § 800.3(a). Once it is determined that the proposed action is subject to the NHPA review process, the agency should identify the appropriate State Historic Preservation Officer (SHPO) and consult with that officer regarding the nature of the undertaking and its effects on historic properties. 36 C.F.R. § 800.3(c). Additionally, the agency must involve local governments and the public. 36 C.F.R. § 800.3(f)(1). The third step requires the agency to determine whether the effects on historic properties will be "adverse", using the criteria specified in the regulations. 36 C.F.R. § 800.5(a). Finally, in the fourth step, the agency must attempt to reach agreement with order consulting parties in developing and evaluating alternatives to avoid, minimize, or mitigate adverse effects. 36 C.F.R. § 800.6. If the agency and the SHPO agree on the plan, they enter into a Memorandum of Agreement (MOA), which is submitted to the Advisory Council for Historic

Preservation prior to its final approval of the undertaking. *See Friends of the Atglen-Susquehanna Trail v. Surface Transp. Bd.* 252 F.3d 246, 254 (3d Cir. 2001); *Tyler v. Cuomo*, 236 F.3d 1124, 1129 (9th Cir. 2000). Where an MOA is executed, it "shall govern the undertaking and all of its parts." 16 U.S.C. § 470(h)-(2).

**1. Defining "Undertaking" and the Undertaking's "Area of Potential Effects**

Plaintiff's primary argument is that FEMA violated Section 106 of the NHPA by improperly defining the Undertaking and the Area of Potential Effects "APE". Specifically, plaintiff argues that FEMA focused only on the Gentilly site where the new Holy Cross School will be built and did not consider the former site of the Holy Cross School in the Lower Ninth Ward.

The "area of potential effects" is defined in the regulations as "the geographic area or areas within which an undertaking may directly or indirectly cause alteration in the character or use of historic properties, if any such properties exist." 36 C.F.R. § 800.16(d). Once the APE is defined, the agency must review existing information regarding properties within the APE and seek additional information from consulting parties with regard to identifying additional historic properties within the APE. Id. at § 800.4(a)(2-3). If the agency finds that historic properties will

be affected, the agency official must notify consulting parties and invite their input on the effects. Id. at 36 § 800.4(d)(2).

FEMA determined that it would use a "phased approach" to Section 106 review by considering the Gentilly site first and then reviewing proposed project plans for the Lower Ninth Ward site whenever Holy Cross School submitted them. AR 1978. FEMA maintains that it would have been inappropriate to define the APE to include the former site of Holy Cross School because there was no proposed Undertaking at that location. FEMA explains that they did not know basic information such as "activities related to changes in function, reuse, or disposition of the existing Holy Cross School campus" at the time the MOA was executed. AR 2295. Subsequently, FEMA could not define the APE to include the former site of Holy Cross School "due to the uncertainty regarding future activities at the current Holy Cross campus." *Id.* However, FEMA acknowledged in the MOA (which was signed by all signatory parties including the SHPO and the ACHP) its obligations under Section 106 and that it would consider activities at the former Holy Cross School site when FEMA received application for assistance plans for that location. *Id. The use of a "phased approach" was reasonable and permitted under 36 C.F.R.sec. 800.4(b) (2).*

FEMA argues that it does not have the authority to require an applicant to site their project in a particular location.  AR 1977. It is the applicant that proposes the project, including the site. Although FEMA may fund "improved project" such as the construction of Holy Cross School in Gentilly, it is ultimately left to the applicant to define the Undertaking and propose where the "improved project" will be constructed.  *Id.*  While it is up to the State to approve or disapprove the proposed improved project, it is FEMA's responsibility to ensure that the Undertaking complies with NEPA and NHPA requirements if it has the potential to affect historic properties.

Plaintiff counters these arguments by maintaining that FEMA violated the NHPA when it failed to consider both the old and new Holy Cross school sites together, at the same time and as part of a single Section 106 process.  The Advisory Council advised FEMA that splitting review of the old and new school sites into two reviews, disconnected in time and process was contrary to both the language and the spirit of Section 106 regulations.  The regulations expressly require FEMA to "consider the views of the Council in reaching a decision."  36 C.F.R. Sec. 800.9(a).

The Advisory Council also recommended "that FEMA include the current Holy Cross campus in the Area of Potential Effects (APE) so that as part of the review of this the undertaking, FEMA will

consider potential effects to historic properties in the Lower Ninth Ward." FEMA responded to the Advisory Council, that it was "premature to pursue further Section 106 review" for any location other than Cabrini Church site, and that instead it "intends to use a phased approach to Section 106 review…" Plaintiffs argue that this response is inadequate because it failed to directly respond to or address the specific regulatory references to which the Advisory Council had referred to determine the applicable "undertaking" and its "APE." Moreover, Plaintiff contends, that FEMA's prematurity and phased approach rationales are problematic because they overlook that the underlying application for FEMA disaster assistance from Holy Cross was based on damaged school buildings and other property located at its already existing Lower Ninth Ward site. That damaged property is what formed the foundation for the federal disaster assistance sought by Holy Cross. Thus, plaintiffs argue that it is the main application for FEMA assistance that constitutes the undertaking, not any particular location where those funds might be used. As such, the fact that an applicant-grantee might choose to relocate its facilities under the improved project provision of FEMA's Public Assistance program, is irrelevant for purposes of determining the undertaking.

Additionally, Plaintiff maintains that when FEMA formally responded to the Advisory Council concerning its basis for a "phased" approach, it only referenced ACHP regulations that encouraged coordinated review efforts under HPA and NEPA, yet in FEMA's brief to this court it now says that "FEMA's decision to define the APE using a phased approach was reasonable and permitted under 36 C.F.R. Sec. 800.4(b)(2). The cited ACHP regulation was never relied on by FEMA; it's nowhere to be found in the administrative record. Moreover, on its face it has nothing to do with, and lends no support for, FEMA's efforts to split a single disaster assistance project. However, plaintiff contends that the cited ACHP regulation does allow for "phased identification and evaluation" of historic properties, but only in situations where proposed alternatives sites "consist of corridors or large land areas, or where access to properties is restricted." 36 C.F.R. Sec. 800.4(b)(2). Those circumstances do not exist in this matter and thus does not apply to the underlying situation.

Establishing an area of potential effects requires a high level of agency expertise, and as such, the agency's determination is due a substantial amount of deference. *See Kleppe v. Sierra Club,* 427 U.S. 390, 412 (1976) ("Resolving these issues requires a high level of technical expertise and is properly left to the informed discretion of the responsible federal agencies. Absent a

showing of arbitrary action, we must assume that the agencies have exercised this discretion appropriately"). FEMA is routinely involved in NHPA issues whenever it funds projects after a disaster that may potentially affect historic properties.

Here, FEMA determined that the proper way to handle both sites with respect to Section 106 review was to use a "phased approach" and wait until it received application for assistance plans from Holy Cross School for the Lower Ninth Ward site. Plaintiff failed to show here the unreasonableness of the "phased approach" because FEMA can revisit and has committed to revisiting the Lower Ninth Ward site and conduct appropriate Section 106 review after it received an application for assistance and proposed project plans for that site. FEMA's definition of the APE is afforded by law substantial discretion. FEMA's decision is affirmed.

**2. Involving and Consulting Necessary Consulting Parties and Substantial Compliance**

Plaintiff next argues that FEMA violated ACHP regulations (33 C.F.R. Sec. 800.2(c)5) by not inviting additional consulting parties during Section 106 consultations—specifically, groups representing Holy Cross neighborhood in the Lower Ninth Ward. Plaintiff's claim relates back to its earlier argument that FEMA did not properly define the APE by also not considering the effect that relocation of Holy Cross School would have on the Lower Ninth

Ward.   FEMA argues that it would use a "phased approach" and withhold Section 106 review until Holy Cross School submitted application for assistance plans to FEMA.  AR 2295-96.  FEMA contends that it could not conduct appropriate Section 106 review because there was no defined undertaking for the site when the MOA was executed and it was premature to conduct the Section 106 review.  *Id.*  FEMA determined that it did not need to consult with groups representing the Holy Cross neighborhood in the Lower Ninth Ward for the Undertaking in Gentilly.  Once FEMA received proposed plans for the Lower Ninth Ward site, FEMA would consider such activities pursuant to the programmatic Agreement.  *See*  AR 2295-96.

Parties agree there are some problems with the Section 106 process at the Holy Cross Site in the Lower Ninth Ward.  However, FEMA maintains that those problems reflect on that Section 106 review and not on the Section 106 process for the Cabrini Church site in Gentilly.  FEMA maintains that the problems with the Section 106 review at the Lower Ninth Ward site were harmless error and FEMA substantially complied with the Programmatic Agreement.

Courts generally reject harmless error as a remedy where an agency issues no notice and offered only informal comment opportunity.  *See, e.g., Chamber of Commerce v. SEC,* 443 F.3d 890, 904 (D.C. Cir. 2006) (Rejecting the harmless error doctrine as

applicable and referring to an attempted informal comment opportunity as an "outright dodge" of required administrative procedures.). The harmless error doctrine has been limited to situations where some significant effort at complying with notice and comment was actually undertaken. *See Sagebrush Rebellion, Inc. v. Hodel,* 790 F.2d 760, 769 (9th Cir. 1986)(applying harmless error doctrine where notice issued and hearings held previously on same issue "afforded the public a full and fair opportunity to be heard.).

Plaintiff argues that there is no legal or factual justification for the Court to find that FEMA substantially complied with its historic preservation obligations or that its mistakes were harmless error. FEMA argues that it "likely would have made a finding of 'no adverse effect' even if it notified additional consulting parties of its conclusion" for the old Holy Cross school site. However, the Fifth Circuit has cautioned that in these types of cases it is important not to prejudge the outcome of the Section 106 process, but rather allow the process to go forward. *Vieux Carre Property Owners, Residents and Associates, Inc. v. Brown*, 948 F.2d 1436 (5th Cir. 1991).

Plaintiff additionally claims that FEMA violated the Section 106 process by failing to engage in meaningful consultations with the consulting parties and by not providing any opportunity for

dialogue with respect to the Gentilly site. FEMA conducted five separate consultation meetings in February and March 2007. The February 26, 2007 consultation meeting was a public meeting held at the University of New Orleans, notice of which FEMA published in two local newspapers. FEMA's public notice also announced that individuals could submit questions and comments by posting them online at [www.crt.state.la.us/culturalassets/femal106](www.crt.state.la.us/culturalassets/femal106) or mailing them to FEMA's Transitional Recovery Office in New Orleans. AR 1521, 1563, 1568. FEMA accepted public comments from individuals who submitted them, not just from Gentilly neighborhood residents. Plaintiff's argument that FEMA would not or did not consider comments from individuals in the Lower Ninth Ward is unpersuasive. Additionally, review of the public comments in the administrative record showed overwhelming support for the Holy Cross project in Gentilly. AR 4001-4312. Further, the NHPA "establishes no clear duty for agencies to evaluate potentially historic sites within a certain manner." *Oglala Sioux Tribe of the Pine Ridge Indian Reservation v. U.S. Army Corps of Engineers*, 2009 U.S. app. LEXIS 13948 *16 (D.C. Cir. 2009). Instead, the NHPA "provides that, before approving any federal project, federal agencies will 'take into account the effect of the Undertaking on any district, site, building structure, or object that is included in or eligible for inclusion in the National Register.'" *Id.*

(*citing* 16 U.S.C. Sec. 470(f)).  FEMA  conducted the four step process under Section 106 with adequate notice and consideration of the effects of the Undertaking with the consulting parties.

### 3.  Raised Objections

Plaintiff further claims that FEMA failed to follow the MOA by not taking into consideration public objections raised. Plaintiff's Memorandum at 18-20.  Plaintiff points to the May 14, 2007 public objection from the Holy Cross Neighborhood Association ("HCNA") requesting that the Section 106 process be reopened. Plaintiff's Memorandum at 19, AR 2724-28.  Although FEMA responded to the objection on June 27, 2007, Plaintiff contends that FEMA deliberately waited until Cabrini Church had been demolished before it responded.  *Id.* at 20.  Plaintiff also argues that FEMA's response was inadequate and that it did not consult with the SHPO and ACHP.  *Id.* at 21.

FEMA reviewed and considered HCNA's May 14, 2007 request to reopen NEPA and Section 106 review, and responded in a June 27, 2007 letter.  AR 2473-75.  HCNA's public objection raised that the former Holy Cross School site in the Lower Ninth ward should also be given Section 106 consideration.  AR 2427-28.  FEMA referenced its March 2, 2007 letter to ACHP explaining that it was premature to pursue further Section 106 review for the site because no application for assistance plans has been submitted to FEMA.  AR

2473-75.  Although all signatory parties to the MOA recognized the need for Section 106 review of the site, FEMA could not take any action until it received Holy Cross School's application for public assistance.  *Id.*  Under the circumstances, FEMA's actions were reasonable and not violative of the MOA.

### 4.  Existing Holy Cross Campus and Section 106

Plaintiff claims that despite FEMA statements indicating that it would conduct historic preservation reviews at the existing Holy Cross campus, "FEMA approved demolition and other activities at the old school site without ever engaging in further 106 compliance" resulting in failure to involve the public and appropriate consulting parties in the Section 106 process.  *Id.* at 22-25.  FEMA acknowledges some missteps in the process relative to the former Holy Cross campus site in the Lower Ninth Ward. However, the record shows substantial compliance with the Programmatic Agreement.  Further, the noted error was harmless error.

Courts have upheld Agency actions in NHPA cases where the court found "substantial compliance" with NHPA requirements.  *See Sierra Club v. Clark*, 774 F.2d 1406, 1410 (9th Cir. 1985)(upholding the Bureau of Land Management decision despite failure to confer with SHPO prior to approval of undertaking as SHPO subsequently concurred and SHPO requested mitigation measured were imposed).

Additionally, "agency missteps too may be disregarded where it is clear that a remand would accomplish nothing behold further expense and delay." *Save Our Heritage, Inc. v. FAA,* 269 F.3d 49, 61 (1st Cir. 2001); *Kerner v. Celebrezze,* 340 F.2d 736, 740 (2nd Cir. 1965). Here, a remand of this case would not change the "no Adverse Effect" finding and the final result would have been the same even if a procedural error had not occurred. FEMA notified SHPO of its section 106 review and SHPO did not object to the record Undertaking. The Court finds substantial compliance has been achieved.

## E. Section 110 Compliance

NHPA Section 110 (a)(2)(c) requires that each federal agency establish a preservation program that ensures "that the preservation of properties not under the jurisdiction or control of the agency, but subject to be potentially affected by agency's actions are given full consideration in planning." 16 U.S.C. § 470h-2(a)(2)(c). This section imposes an affirmative responsibility that "extends to a systematic consideration of properties not under the jurisdiction or control of the agency, but potentially affected by agency actions." 63 F.R. 20503. NHPA Section 110 further requires that "all Federal agencies shall carry out agency programs and projects" in accordance with the purposes

of the NHPA and give consideration to programs and projects which will further the preservation of the NHPA. 16 U.S.C. § 470h-2(d).

The record shows that FEMA conducted the four step process under Section 106 that was ultimately approved by the ACHP and memorialized in the MOA for the new Holy Cross School site. AR 2294-2311.

FEMA's efforts to ensure compliance with Section 106 involved countless hours, from consulting with various parties regarding the Undertaking, to planning and conducting consulting meetings, to recording and considering public comments and concerns regarding the Undertaking, to making revisions to the final MOA. FEMA's Public Assistance is in substantial compliance with Section 110 of the NHPA. Accordingly, Plaintiff's claim fails.

## CONCLUSION

The sole and only issue before this Court is whether the record of FEMA's decision, limited by the standard of review prescribed by the Administrative Procedures Act, supports the conclusion reached by the Agency. This Court may not substitute its own judgment for that of FEMA. The record shows substantial compliance with law and regulatory rules. Accordingly,

**IT IS ORDERED** that the motion for Summary Judgment filed by FEMA is **GRANTED**; the cross-motion for Summary Judgment filed by the Friends of St. Francis Xavier Cabrini Church is **DENIED**, and plaintiff's claims are **DISMISSED.**

New Orleans, Louisiana this 19th day of July 2010.


_____
United States District Judge